

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
 JUDGE

# LETTER OPINION

May 8, 2009

Bennet Dann Zurofsky
17 Academy Street
Suite 1010
Newark, New Jersey 07102
 (*Attorney for Plaintiffs*)

Albert D. Barnes
Office of the Attorney General
Department of Law & Public Safety
25 Market Street
P.O. Box 114
Trenton, New Jersey 08625
 (*Attorney for Defendant*)

>  RE: **International Brotherhood of Electrical Workers, et al. v. New Jersey Transit Rail Operations, Inc.**
>    **Civ. No. 08-3557 (WJM)**

Dear Counsel:

 This matter comes before the Court on the parties' cross-motions for summary judgment. There was no oral argument. Fed. R. Civ. P. 78. For the reasons stated below, Defendant's motion for summary judgment is **GRANTED**, Plaintiffs' motion is **DENIED**, and Plaintiffs' complaint therefore is **DISMISSED** with prejudice.

## I.    BACKGROUND

The pertinent facts of this case are not in dispute.  Defendant New Jersey Transit Rail Operations ("NJ Transit") is a state-owned corporation, headquartered in Newark, New Jersey.  As its name implies, NJ Transit is engaged in the transportation of passengers by rail.  Plaintiffs are unincorporated labor organizations, which represent electricians, train service employees, and train dispatchers employed by NJ Transit. Plaintiff International Brotherhood of Electrical Workers is headquartered in Washington, D.C.  Plaintiffs United Transportation Union and American Train Dispatchers Association are located in Cleveland, Ohio.

In or about May 2008, NJ Transit issued an "Ethics Compliance Booklet for NJ Transit Agreement Employees." *See* Compl. Ex. A.  With the distribution of this booklet, NJ Transit informed its employees that they were required to comply with the Uniform Ethics Code, promulgated by the New Jersey State Ethics Commission, and the New Jersey Conflict of Interest Law.[1]  The NJ Transit employees who received the booklet – including the unionized employees represented by Plaintiffs – were then required to sign a form, acknowledging that they received the document and were bound by the state's conflict of interest statute.

In addition to the aforementioned form, the ethics compliance booklet contained two additional disclosure documents.  The first – the "NJ Transit Employee Statement of Outside Employment and Activities" – required the disclosure of any "business, trade, profession, or employment outside of NJ Transit, on a part-time or full-time basis for which [the NJ Transit employee] receive[s] any income or other consideration."  *See* Compl. Ex. A.  This form also asked that employees list whether any members of their immediate family are employed or hold an interest in "any firm performing any service for the State of New Jersey which ... directly or indirectly, receives funding from the State."  *See id.*  At the bottom of page two was a section to be filled out by NJ Transit's Ethics Liaison Officer, identifying whether the information disclosed reveals a conflict. *See id.*

The second form – "NJ Transit Request for Approval for Attendance at Event

---

[1] The ethics compliance booklet explains, in a brief introduction, that the ethical compliance policy contained therein was set forth by the State of New Jersey:

> "In a recent decision by the State Ethics Commission, it was determined that all NJ TRANSIT unionized employees must be issued the contents of this booklet ... This booklet is provided to inform you of your ethical obligations which New Jersey State law places on State and NJ TRANSIT employees."

(Compl. Ex. A)

('RAAE')" – required employee disclosure of attendance at any event, such as a meeting, conference, or fundraiser.  *See* Compl. Ex. A.   Disclosure was only required, however, if the employee was invited because of his government position and the event was both sponsored or co-sponsored by a non-state government source.  *See id.*

After NJ Transit issued the ethics compliance booklet, Plaintiffs filed suit in this Court, requesting: 1) declaratory judgment that Defendant's conduct violated the federal Railway Labor Act; 2) a status quo injunction; and 3) attorney's fees.  Defendant NJ Transit filed its answer on September 9, 2008.  Before the Court now are the parties' cross-motions for summary judgment.

## II.    DISCUSSION

In their motion for summary judgment, Plaintiffs allege that NJ Transit's enforcement of this ethics policy runs afoul of the federal Railway Labor Act, 45 U.S.C. § 151 *et seq*.   Specifically, Plaintiffs take issue with the two documents described above – the outside employment disclosure and event attendance approval forms. *See* Pls.' Statement of Undisputed Material Facts ¶ 6.  Plaintiffs contend that Defendant's institution of an ethics policy violated the Railway Labor Act, which dictates that neither labor nor management may change the status quo with regard to "pay, rules, or working conditions" without first engaging in a protracted mandatory bargaining period.  *See* 45 U.S.C. §§ 152, 156.

Defendant NJ Transit argues, in turn, that it issued the ethics compliance booklet to inform its employees of their obligations under state law. As such, Defendant contends that these statutory requirements are independent of the parties' Collective Bargaining Agreements.  Consequently, the Railway Labor Act does not preempt the ability of NJ Transit – as a corporation established by the State of New Jersey[2] – to regulate employee conflicts of interest.

### A.    <u>Summary Judgment Standard</u>

Summary judgment eliminates unfounded claims without resorting to a costly and lengthy trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). However, a court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

---

[2] *See* N.J.S.A. § 27:25-4(a).

The summary judgment standard does not change when, as here, the parties have filed cross-motions for summary judgment. *See Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987). Cross-motions for summary judgment are no more than a claim by each side that it alone is entitled to summary judgment. *Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001). If review of cross-motions for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts. *See Iberia Foods Corp. v. Romeo Jr.*, 150 F.3d 298, 302 (3d Cir. 1998).

### B.      Preemption

The threshold question in this dispute is whether the Railway Labor Act supercedes the ability of the state of New Jersey – and by extension, NJ Transit –  to enforce ethical regulations for its workers through the state's Conflict of Interest Law and the Uniform Ethics Code.  If the Railway Labor Act has preemptive effect, NJ Transit then would be barred from enforcing the instant ethical regulations without first engaging in negotiations with Plaintiff-unions, assuming the federal statute is otherwise applicable.

In their moving brief, Plaintiffs appear to assume without explanation that the Railway Labor Act – with its mandatory status quo and bargaining provisions – governs. NJ Transit, in turn, argues that the Railway Labor Act does not supercede NJ Transit's ability to enforce statutorily-mandated ethical guidelines with respect to its employees. The parties present no genuine issues of material fact on this point; instead, it appears to the Court to be a pure question of law.

The doctrine of preemption in labor law concerns the extent to which Congress has limited the permissible scope of state regulation of activity touching on labor-management relations.  *See N.Y. Tel. Co. v. N.Y. State Dep't of Labor*, 440 U.S. 519, 527, 99 S.Ct. 1328, 1334 (1979); *Maher v. N.J. Transit Rail Operations, Inc.*, 125 N.J. 455, 465, 593 A.2d 750, 755 (1991).  In delineating the boundaries of permissible state regulation, the Supreme Court has explained that it "cannot declare preempted all local regulation that touches or concerns in any way the complex interrelationships between employees, employers, and unions; obviously much of this is left to the States." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208 n.4, 105 S.Ct. 1904, 1910 (1985); *see also Terminal R.R. of St. Louis v. Bhd. of R.R. Trainmen*, 318 U.S. 1, 7, 63 S.Ct. 420, 423 (1943) ("We hold that the enactment by Congress of the Railway Labor Act was not a preemption of the field of regulating working conditions.")  As such, preemption of a state statute "should not be lightly inferred in [this] labor area, since the establishment of labor standards falls within the traditional police power of the State." *Fort Halifax*

*Packing Co. v. Coyne*, 482 U.S. 1, 21(1987).

In weighing whether a state statute addressing labor and management relations is preempted, the Court must first examine congressional intent. *Lueck*, 471 U.S. at 208 ("The purpose of Congress is the ultimate touchstone."). Here, there is nothing in the record to support a finding that Congress intended the Railway Labor Act to reach conflict of interest mandates. In addition, examination of the Railway Labor Act reveals no express congressional intent to regulate ethical standards, nor can such a limitation be inferred from the Act's scope. Since both the record and the statute itself are silent on this point, it seems plain that NJ Transit's application of the New Jersey conflict of interest statute and regulation is not preempted by the Railway Labor Act.[3]

### C.  Applicability of the Railway Labor Act – Negotiable "Agreements"

Even assuming the Railway Labor Act preempted state law in this context, the instant dispute still would not be subject to the mandatory status quo and bargaining provisions of the Act. In discussing the scope of those contract disputes preempted by the Railway Labor Act, the Supreme Court noted that federal labor law does not "grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260, 114 S.Ct. 2239, 2248 (1994). Since federal law does not give parties to a collective bargaining agreement the ability to contract for something illegal under state law, it follows that federal law also does not mandate that parties collectively bargain for something contrary to state law.

As such, it is necessary to examine what state law requires in this context. Here, the parties do not dispute that the NJ Transit enacted its ethics requirements pursuant to

---

[3] In their reply brief, Plaintiffs argue that state law mandates do not supercede the preemptive effect of the Railway Labor Act when rail workers are concerned. *See* Reply Br. at 9. First, this assertion is belied by the case law. *See, e.g. Colorado Anti-Discrimination Comm'n v. Continental Airlines, Inc.*, 372 U.S. 714, 724, 83 S.Ct. 1022, 1027 (1963) (stating that Railway Labor Act does not preempt state statute protecting employees from racial discrimination). Further, the cases the Plaintiffs cite are distinguishable from the case at bar. In *United Transp. Union v. Long Island R.R. Co.*, 455 U.S. 678 (1982), the state acted to block the union from striking. In *California v. Taylor*, 353 U.S. 553 (1957), California instituted a state policy against collective bargaining by state employees. These two cases presented state policies in direct conflict with federal labor law, in an area in which Congress has expressly occupied the field through the Railway Labor Act. As such, the state mandates in those two cases were clearly preempted by the Railway Labor Act. There is no such direct conflict here.

the standards set forth in the Conflict of Interest Law,[4] which states in relevant part:

> A code of ethics for officers and employees of a State agency shall conform to the following general standards:
>
>> (1) No State ... employee should have any interest, financial or otherwise, direct or indirect, or engage in any business or transaction or professional activity, which is in substantial conflict with the proper discharge of his duties in the public interest.
>>
>> ...
>>
>> (3) No State ... employee should use or attempt to use his official position to secure unwarranted privileges or advantages for himself or others.
>>
>> ...
>>
>> (5) No State ... employee should undertake any employment or service, whether compensated or not, which might reasonably be expected to impair his objectivity and independence of judgment in the exercise of his official duties.
>>
>> (6) No State ... employee should accept any gift, favor, service or other thing of value under circumstances from which it might be reasonably inferred that such gift, service or other thing of value was given or offered for the purpose of influencing him in the discharge of his official duties.

N.J.S.A. §§ 52:13D-23(e)(1)-(6).  Further, the parties do not dispute that the Code of Ethics is both applicable to NJ Transit employees and incorporates the same standards.[5]

Thus, compliance with the law of the State of New Jersey requires that NJ Transit employees – as state employees[6] – adhere to the ethical standards set forth in the Conflict of Interest Law and Uniform Ethics Code.  The two forms at issue track the language of the state requirements.

---

[4] While initially Plaintiffs stated that NJ Transit enacted its ethics requirements pursuant to a 2006 Executive Order issued by Governor Corzine, Defendants noted in their opposition that the actual source of state authority for the guidelines was the 1971 Conflict of Interest Law. However, as Plaintiffs acknowledged in their reply, the asserted source of state law authority is of little practical import here.  Instead, it is only relevant that these requirements were mandated by state law.

[5] For example, the Code of Ethics requires that a state "employee shall obtain the approval of the [Ethics Liaison Officer] prior to engaging in any of the following outside activities ... 1. Commencement of any business, trade, profession or other compensated employment ... 2. Uncompensated or volunteer work for or with any entity." *See* Compl. Ex. A.

[6] NJ Transit employees fall under the definition of "State employee" in the Conflict of Interest law.  *See* N.J.S.A. § 52:13D-13(b)(1) (defining "State employee" as "any person ... holding office or employment in a State agency.").  NJ Transit is a State agency under the Conflict of Interest Law, as it was established by statute within the Executive Branch of the State Government.  *See* N.J.S.A.§§ 52:13D-13(a), 27:25-4(a).

Here, Plaintiffs seek to force negotiation of their membership's compliance with these state requirements; however, as noted above, federal labor law, including the Railway Labor Act, does not grant NJ Transit employees the ability to negotiate for contractual terms contrary to New Jersey law.  Compliance with this state law, therefore, is not a proper basis for a negotiable labor agreement under the Act, as there can be no mandatory negotiation period for contractual provisions contrary to the law.  Application of the status quo and bargaining provisions of the Act therefore would be contrary to the language and intent of the statute.

## III.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED**, Plaintiffs' motion is **DENIED**, and Plaintiffs' complaint therefore is **DISMISSED** with prejudice.

        /s/ William J. Martini
        **William J. Martini, U.S.D.J.**